[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR RECONSIDERATION AND REARGUMENT
The court decided this matter April 27, 1994 and in its memorandum of decision found that the "other insurance" clause on the other uninsured motorist (UM) insurance policy (Aetna's) read as follows:
 If other similar insurance applies to the loss, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collected insurance.
In fact that clause had been amended by an endorsement which read as follows:
 If there is other applicable similar insurance, we will not pay for any damages which would duplicate any payments made for damages under such similar insurance. However, any CT Page 8799 insurance we provide with respect to a vehicle you do not own, to which other similar insurance is applicable, shall be excess over such other applicable insurance.
The plaintiff, a pedestrian, did have UM coverage under a policy of his own and as an insured relative on his father's policy.
Law[1]
Other insurance clauses may be "used to determine the order of the obligation to provide coverage between insurers furnishing underinsured motorist coverage to a claimant." Aetna Casualty Surety Co. v. CNA Ins. Co., 221 Conn. 779, 780-781.
As corrected by this memorandum the other insurance clause of each policy is identical and they are also the same as the other insurance clauses recited in Aetna supra. However, in that action there was UM coverage by another insurer on a car that was not involved in the accident. As a result the Supreme Court held the first insurer's UM coverage was primary and the second insurer's was excess. That is not our situation as our plaintiff was a pedestrian.
It is true that the arbitrator ruled that the award was to be "on a pro rata basis with the Aetna policy" and the defendant USFG policy. However, because this was a compulsory arbitration do novo judicial review is necessary.
American Universal Ins. Co. v. Del Greco, 205 Conn. 178, 191.
We have two policies. Both are excess. Our plaintiff was insured for liability under his own USFG policy which provides UM coverage.
An excess clause is one which provides that if there is other collectible insurance covering the loss the policy of the company which wrote the clause is applicable if the total loss exceeds the limits of the primary policy. 8A Appleman, Insurance Law and Practice §§ 4906, 4908, 4909 and 4910.
Both of our clauses are "excess" Aetna Casualty Surety Co.v. CNA supra tells us we should decide which is primary. id 783. Because in that case there was a clear finding that one policy CT Page 8800 was primary and the other excess the court held there was no conflict between the two policies. id. 787. In contrast our two policies appear to be in direct conflict. In such a situation the cases suggest the best solution is to treat both as primary and prorate the loss. Atlantic Mutual Ins. Co. v. Trust Ins.Exchange, 797 F.2d 1288, 1294-9 5th Cir. (1986). Continental CanCo. v. Hartford Acc. Indem. Co., 28 Cal.Rptr. 606, 609-612,213 Cal.App.2d 78, (1963). In St. Paul Mercury Ins. Co.Underwriters at Lloyds of London, 165 F.2d 659 it was said,
 "The contracts do contain language contemplating, in the abstract, the existence of other insurance. Each company attempted to accomplish essentially the same thing in such an eventuality, although different wording was used. Each sought to place itself in line after primary insurance had been exhausted, and so to protect the insured should such an eventuality come about. This is sufficient. It demonstrates that each had a sufficiently similar obligation to the insured that both should discharge it. This general purpose is disclosed by the policies, and is within the general intention of the parties . . . .
 St. Paul by its "other insurance" clause did not place itself after Lloyds as it urges, nor did Lloyds make St. Paul primary insurance by the wording it used. Both companies undertook to provide excess coverage, and both were on an equal basis once the primary coverage was exhausted. There is no reason to distinguish between them."
In Aetna Casualty supra the court chose the Aetna policy as primary because "the claimant was injured while occupying a vehicle owned by [the father], the named insured in the Aetna policy." id 787. The court did this by interpreting the policies. id. 783-787. The court's decision was based on the CT Page 8801 fact that the claimant was actually in the "Aetna car." That case compared the definition of "you" in each policy. We do not have the USFG definitional language and thus cannot make a similar comparison.
"But where excess [clause] conflicts with excess [clause], as a rule, the common approach . . . is to hold them to be mutually repugnant and require them to share the risk the same as if both were primary. They do not, in fact, become primary policies, but they are treated as if they were primary and generally prorated in accordance with policy limits." Appleman, Insurance Law and Practice Vol. 8A § 4906.
This appears to have been the arbitrator's approach and cannot be faulted on this record. See Continental Ins. Co. v.Aetna Cas. and Sur. Co., 823 F.2d 708, 711 (2d Cir.)
Plaintiff contends that the USFG excess clause must be interpreted to be operational only after actual payment by Aetna. The clause does not require that interpretation. If both policies were both so interpreted the claimant might not be able to collect under either.
Motion to reconsider action is granted.
Application to vacate is denied.
N. O'Neill, J.